## In re CHAN FOO LIN.

(Circuit Court of Appeals, Sixth Circuit.   June 5, 1917.)

No. 2917.

1. ALIENS ⬯32(7)—PROCEEDINGS TO DEPORT—EXAMINATION OF DEFENDANT.
    A proceeding to deport a Chinese person was of a civil and not of a criminal character, though it was the purpose of the government to proceed upon the hypothesis that the alien had entered the United States surreptitiously and in violation of Immigration Act Feb. 20, 1907, c. 1134, § .36, 34 Stat. 908 (Comp. St. 1916, § 4285), forbidding entry into the United States, except at specified places, and also that he was in the United States in violation of the Chinese exclusion laws, and hence there was no valid objection to the government calling the defendant to state the place of his birth and explain his presence in the United States, without calling other witnesses to show that he was unlawfully within the United States or was an alien.

2. ALIENS ⬯32(9)—PROCEEDINGS TO DEPORT—DENIAL OF FAIR TRIAL.
    Where, in a proceeding to deport a person of Chinese descent, who claimed to be a citizen and introduced substantial evidence in support of this claim, the recommendation of deportation was based in part on statements of immigration inspectors received by the inspectors conducting the hearing, subsequent to the hearing, and the government never informed defendant that he would be given an opportunity to explain and meet these statements, nor even exhibited to him a photograph, by reference to which one of the inspectors making such statements identified defendant as a person formerly seen in Mexico, he was denied a fair hearing.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 94.]

3. CONSTITUTIONAL LAW ⬯318—DUE PROCESS OF LAW—DEPORTATION OF ALIENS.
    While the decisions of an executive officer, clothed with power to deport aliens, will not be subjected to technical tests, yet the guaranty of due process forbids deportation without according a full and fair hearing.

    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 949.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John H. Clarke, Judge.

Habeas corpus proceeding by Chan Foo Lin, alias Frank Chan. From a decree dismissing the writ, the petitioner appeals. Reversed and remanded, with directions.

John A. Cline, of Cleveland, Ohio, for appellant.

Joseph C. Breitenstein, Asst. U. S. Atty., of Cleveland, Ohio, for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and SATER, District Judge.

WARRINGTON, Circuit Judge. This is an appeal from an order dismissing a proceeding in habeas corpus. Petitioner, Chan Foo Lin, alias Frank Chan, claimed he was unlawfully deprived of his liberty by an inspector in charge of the immigration department of the Cleveland district of Ohio. The usual writ having been issued, the inspec-

tor answered that he was holding petitioner in virtue of a warrant for his arrest which had been issued by the Acting Secretary of Labor; that upon the matters involved in the warrant of arrest petitioner had been granted a fair and full hearing in accordance with law and with the regulations of the Secretary of Labor; that upon due consideration the Acting Secretary of Labor had by wire instructed respondent to convey petitioner to New York for deportation. Petitioner filed a reply, consisting of denials and a series of allegations of fact, among which it was stated that he was born in the United States, and that he had not been granted a fair trial. Discharge of petitioner was denied, and hence the appeal.·

The question here must turn upon the issue whether petitioner was granted a fair trial prior to the suing out of the writ of habeas corpus. The warrant of arrest, bearing date June 19, 1914, is addressed to Inspector Fluckey and signed by the Acting Secretary of Labor. The warrant states:

"Whereas, from evidence submitted to me, it appears that the alien," petitioner, "who landed at an unknown port on or subsequent to the 1st day of July, 1911, has been found in the United States in violation of the act of Congress approved February 20, 1907, amended by the act approved March 26, 1910, for the following among other reasons: That the said alien is unlawfully within the United States, in that he has been found therein in violation of the Chinese exclusion laws, and is therefore subject to deportation under the provisions of section 21 of the above-mentioned Act, and that he entered in violation of section 36 of the said act, thereby entering without inspection."

The command is that the inspector "take into custody the said alien and grant him a hearing to enable him to show cause why he should not be deported in conformity with law." It is to be observed of the warrant that petitioner is charged with the violation of both the Immigration Act and the Chinese exclusion laws. The section (36) of the former act so charged to be violated forbids an alien to enter the United States, except at "seaports" or at such "place or places as the Secretary of Commerce and Labor may from time to time designate." 34 Stat. 908, c. 1134, § 36, passed February 20, 1907 (Comp. St. 1916, § 4285). The amendment of March 26, 1910, mentioned in the warrant, does not affect section 36 (36 Stat. 263–265, c. 128 [Comp. St. 1916, § 4244]). The telegram (the "wire") mentioned in the inspector's answer shows that the portion of the warrant charging violation of the Chinese exclusion laws was intended to apply to section 6 of the act of May 5, 1892, as amended November 3, 1893 (27 Stat. 25, c. 60; 28 Stat. 7, c. 14 [Comp. St. 1916, § 4320]), and to section 7 of the act of September 13, 1888 (25 Stat. 447, c. 1015 [Comp. St. 1916, § 4308]), and "rule 1, Chinese Rules." Section 6, so referred to, in terms required Chinese laborers, at the date of the act or within one year thereafter, to apply to a collector of internal revenue for a "certificate of residence"; but in view of the date of the act (1892) and of petitioner's age, seemingly 22 years, the object of the charge made under this provision is not perceived. Section 7 exacts production of certificates of re-entry by Chinese laborers who, having previously entered this country and returned to China, seek to re-enter here; and rule 1, Chinese Rules, forbids a Chinese person to enter

the country, except at designated ports and under prescribed conditions.

The warrant of arrest appears to have been issued upon a statement made by the petitioner, June 1, 1914, to Inspector Francis at a laundry in Cleveland, and a further statement of the inspector in charge at Detroit, who from a photograph of petitioner concluded that he had seen him in Windsor, Ontario. The statement of petitioner was made in the form of answers to questions put by Inspector Francis through a Chinese interpreter and taken and transcribed by a stenographer. At the beginning of the examination the petitioner answered the questions with apparent frankness, giving his name as Frank Chan, and also as Chan Foo Lin, his age at 22 years, and the names of his parents, stating that he was born in San Francisco, that his mother had died there and his father in China, also that he had a birth certificate, but the so-called certificate is described in the record as a "red slip of Chinese paper, unsigned, stating that this boy was born on February 23, 1893; it does not state where he was born." Later, however, he seems to have thought the examiner was disinclined to believe him, and he refused to answer questions. The inspector sought in several ways to induce him to state in detail such facts and circumstances as might tend either to corroborate or discredit the claim that he was born in San Francisco, saying that if he would frankly answer the questions the inspector would give him "a square deal," but this elicited no answer except "I have nothing to say." Whatever else may be said of the examination, some answers were secured which apparently were not reconcilable with some of the petitioner's later statements. On June 25, 1914, and after issue of the warrant petitioner was arrested and ordered "to show cause why he should not be deported in conformity with law." A hearing was begun July 29th, before Inspector Francis, as examining officer; several delays having occurred upon request of petitioner's counsel. Inspector Francis and J. A. Fluckey, inspector in charge, with an interpreter and stenographer, also petitioner, with his counsel and a Chinese interpreter furnished by them, were present at each session of the hearing that ensued.

[1] Counsel for petitioner objected to Inspector Francis as the examining officer, for the reason that he had conducted the investigation upon which the warrant of arrest was issued, and would be expected later "to render final decision" in the case; also to any examination of petitioner, because the government had introduced no proof that he was unlawfully within the United States, or that he is an alien. We shall have something to say later of the first of these objections; but the last objection is untenable. If we assume that the purpose of the government was to proceed under the Immigration Act upon the hypothesis that petitioner had entered the United States surreptitiously and in violation of section 36 of that act (34 Stat. 908), and also that he was within the United States in violation of the Chinese exclusion laws, still the proceeding was of a civil and not of a criminal character (Low Foon Yin v. United States Immigration Comr., 145 Fed. 791, 793, 76 C. C. A. 355 [C. C. A. 9]; United States v. Tom Wah, 160 Fed. 207, 210, 211, and citations [D. C.], affirmed

163 Fed. 1008, 1009, 90 C. C. A. 178 [C. C. A. 2]; Siniscalchi v. Thomas, 195 Fed. 701, 703, 115 C. C. A. 501 [C. C. A. 6]), and hence we see no reason why the government could not rightfully call petitioner to state the place of his birth and explain his presence in the United States, since his right to remain here might depend upon such facts as he could give.

This, however, does not settle the question whether petitioner was accorded a full and fair hearing. The hearing was opened by the inspector's examination of petitioner, and it is plainly to be inferred from the questions put by the inspector that his purpose was to discredit petitioner. It soon became evident, if this was not so at the preliminary hearing, that petitioner was of Chinese descent, and that the defense intended to be relied on was that he is a native-born citizen. Testimony was offered, through petitioner and some of his witnesses, which, if true, shows that he was born in San Francisco; that his mother abandoned her husband and petitioner when the latter was between 3 and 4 years of age, and has not been heard from since; that owing to this abandonment, and the death of his father, petitioner was taken in charge by his former nurse, who had intermarried with a witness who testified here as petitioner's foster father; that this couple removed to Wahlee Island, which seems to be in the Sacramento river, near Stockton, and a few hours' ride from San Francisco, taking the boy with them; that the foster father maintained a store on this island for some 10 years; that the permanent population of the island was small and composed of Chinese, though during the season for gathering the crops, principally potatoes, large numbers of laborers were brought to the island; that petitioner lived with his foster parents on this island 10 or 12 years, when the foster mother died and the foster father removed to Cleveland, and subsequently removed petitioner to the same place; that petitioner had been in Cleveland and Akron some 4 years before his arrest; and that he had never been outside of the United States.

[2] This was met, as before indicated, by a sworn statement of Inspector Chatfield, of Detroit, that he had seen petitioner "about 9:25 p. m. on May 16, 1914, in Windsor, Ontario"; but in view of the testimony of a well-known teacher of Cleveland it is practically admitted that the inspector was mistaken. Next, the government presented two other statements, one by an inspector of El Paso, and the other by an inspector at Sacramento. The first inspector, Jose Salazar, upon being shown a photograph said to be one of the petitioner, stated that he had seen him in Juarez and in Chihuahua "many times" and that he knew him "very well." He first stated that he had seen petitioner "a little less than a year before," though he said, further, that he could not "just exactly give the right date; it has been a few months ago." This statement bears date August 11, 1914. The statement of the inspector at Sacramento, C. H. Hannum, is dated August 10, 1914, and is to the effect that he had made "such investigations as were possible concerning Wah Lee, Bolley or Polley Island"; that he had visited Chinatown, and "was informed by Chung Jung that Bolley Island was Bouldin Island, in the delta between the Sacramento and San Joaquin rivers, and that it had been flooded for 6 or 7 years, and no-

body had raised any crops on it during that time, although it had formerly produced two or three crops of potatoes on a portion of it"; that "this statement was verified by six or seven old Chinese," and, as he was informed at the office of the state engineer, "that in January, 1907, the levees reclaiming the island had washed out, and that the break was exceedingly deep; that since that time no effort had been made to reclaim any portion of it." He further states:

"This island is formed by the south fork of the Mokelumme river, Potato slough, and the San Joaquin river. I have passed the island, and know that the conditions are at present as described by officials in the state engineer's office and by Mr. Shinn, and which they claim have existed since 1907."

These statements were not presented at the hearing before Inspector Francis, they seem to have been taken after the hearing was closed, and complaint was made of them by counsel for petitioner at the oral argument here. It was insisted that the statements had been taken without notice to counsel, and that no opportunity had been given to cross-examine either Salazar or Hannum. Since the cause was submitted here the United States attorney has presented a motion for permission to introduce "certain records not hereinbefore filed and made a part of the record." The government supported the motion by affidavit, and counsel for petitioner contested it by brief. In view of some of the papers so sought to be introduced, we have concluded to grant the motion. It appears in one of these papers that counsel for petitioner received the statements of these two inspectors, Salazar and Hannum, on September 4, 1914; yet it nowhere appears that the government informed the petitioner that he would be given opportunity to explain and meet either of the statements, nor does it appear that even the photograph shown to Salazar was ever exhibited to petitioner or his counsel (much less that petitioner was confronted with Salazar—Backus v. Owe Sam Goon, 235 Fed. 847, 853, 149 C. C. A. 159 [C. C. A. 9]), and the photograph itself is not to be found in the record.

Considering the character of these proceedings, it was obviously necessary to a fair hearing that petitioner or his counsel be accorded at least seasonable opportunity to examine the photograph and to contest the statements so relied on, instead of being put to the burden of demanding the right to take further proofs, since, in view of the course the examining inspector was pursuing, there would seem to have been but slight reason to expect that such a demand would be granted. It is apparent from the statements themselves that Inspectors Salazar and Hannum, like Inspector Chatfield, may have been mistaken. We are not impressed by the statement of the former; and, in view of the confusion in names and location given to the island in question, it is possible, if not probable, that the parties were not speaking of the same island. Furthermore, none of the witnesses appeared before the trial judge; and, in a proceeding conducted as this one was, we regard such a fact as important. It is important to petitioner and such of his witnesses as testified to the place of his birth, and also to his environments prior to his removal to Cleveland. True, the petitioner and some of his witnesses made contradictory statements,

and some were otherwise contradicted; and yet there seems to be substantial testimony showing that petitioner was born in San Francisco and has never been outside of the United States, and, particularly in view of the corroborative effect of the testimony of the teacher of Cleveland, that petitioner is entitled to credence.

However, it is not meant to pass upon the credibility of any of these witnesses; for, in determining the question whether a full and fair trial was given, it is enough to know that on the vital issues the government secured the benefits of cross-examination of petitioner and his witnesses alike, while the petitioner has received no corresponding advantages and has been deprived even of the opportunity to meet and explain the ex parte statements mentioned of the government's witnesses. Surely, if the testimony of petitioner and his witnesses is not true, this ought to be shown by substantial evidence and under circumstances that would give to petitioner reasonable opportunity to meet it. It is true, as counsel claim, that the inspector who investigated into the conditions of petitioner's presence in Cleveland also sat in hearing of such testimony as was produced in the presence of both sides; and although he did not in terms recommend that petitioner be deported, his "summary" of the evidence is, we think, in material respects immoderate and calculated to create erroneous impressions. Inspector in Charge Fluckey made the recommendation to deport.

[3] It is a recognized rule that while a decision of an executive officer clothed with power to deport aliens will not be subjected to technical tests, yet the guaranty of due process forbids the deportation of a respondent without according to him a full and fair hearing. Lewis v. Frick, 233 U. S. 291, 300, 34 Sup. Ct. 488, 58 L. Ed. 967. We think this was not done here, and consequently that the case has sufficient analogy to the class of decisions like Whitfield v. Hanges, 222 Fed. 745, 756, 138 C. C. A. 199 (C. C. A. 8), to require that the decree be reversed, and the cause remanded to the court below, with directions so to modify the order from which the appeal was taken as to retain jurisdiction and custody of the petitioner, subject, however, to bail, and to hear and determine the case on its merits, de novo, on such evidence and proofs as the parties may offer under the warrant of arrest. We are the more content to adopt this course since a question of citizenship is involved here (Chin Yow v. United States, 208 U. S. 8, 13, 28 Sup. Ct. 201, 52 L. Ed. 369; United States v. Petkos, 214 Fed. 978, 980, 131 C. C. A. 274 [C. C. A. 1]; and see Ex parte Chin Loy You [D. C.] 223 Fed. 833, 839), and an order will be entered accordingly.