### Ex parte RADIVOEFF.

(District Court, D. Montana. February 6, 1922.)

No. 326.

1. **Aliens ☰53—Constitutional law ☰318—Departmental regulations governing deportation proceedings are binding on the government, and compliance is essential to due process.**

   Departmental rules governing deportation proceedings, in so far as consistent with law, are themselves law, and binding on the government, as well as the aliens, and compliance therewith is essential to the due process of law guaranteed by the Constitution.

2. **Aliens ☰54—Fair hearing denied alien sought to be deported.**

   An alien, sought to be deported as advocating and teaching the unlawful destruction of property, etc., held denied a fair hearing, where the warrant of arrest was issued without probable cause, supported by oath or affirmation, the alien was made a witness against himself, the hearings were quasi secret, rather than open, the alien was not shown the evidence on which the warrant was issued, or given time to secure counsel, as required by department rule 22, and the government refused to produce a former inspector, whose statements were admitted in evidence, for cross-examination, unless the alien would state what he expected to prove and arrange for the inspector's compensation, contrary to rule 24, especially where the inspector at first assumed that the alien was bound to prove himself innocent, though this theory was ostensibly receded from.

---

☰For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Aliens ☞54—Government witnesses must be produced for cross-examination, regardless of distance or expense.**

> In deportation proceedings, verified or unverified statements of inspectors or others are ex parte, and incompetent, if the makers are not produced for cross-examination by the alien, no matter what the distance or expense involved in producing them.

**4. Aliens ☞54—Department's decision in deportation cases conclusive, when supported by evidence and hearing fair.**

> If deportation proceedings are supported by substantial evidence and fairly ·conducted, the department's decision is conclusive on the courts.

**5. Aliens ☞54—Deportation· proceedings reviewed, where not supported ·by material evidence or otherwise unfair.**

> If deportation proceedings are without the support of substantial and competent evidence, or otherwise unfair, the department's adverse decision is subject to review in the courts, and to be defeated by habeas corpus brought by the alien.

Application by Nicholas Radivoeff for a writ of habeas corpus. Writ granted.

Harlow Pease and Nolan & Donovan, all of Butte, Mont., for petitioner.

John L. Slattery, U. S. Atty., and Ronald Higgins, Asst. U. S. Atty., both of Helena, Mont., for respondent.

BOURQUIN, District Judge. The Department of Labor detains petitioner for deportation, as an alien who advocates and teaches the unlawful destruction of property. He assails the proceedings as unfair to an extent that denied him due process of law. Heard herein, the evidence is that January 19, 1920, the department issued a telegraphic warrant to arrest the alien upon a charge as aforesaid. This warrant was without probable cause, supported by oath or affirmation. That day, with it armed, the department's ·inspector, Baldwin, arrested the alien. Immediately Baldwin administered an oath to the alien and interrogated him on material matters. He neither showed the evidence on which the warrant issued to the alien, nor waited the presence of counsel then selected by the alien, though the department's rule 22 provides that he shall do both. What this evidence was, and that it was ever shown to the alien, does not definitely appear.

Baldwin then suspended the hearing, some time passed out the service, ·and some 11 months later the hearing was resumed before Inspector Andrews. The alien had counsel, but Andrews, over his objection, excluded the public. Andrews stated the alien should be sworn, and show cause why he should not be deported, but, on counsel's objection, proceeded to introduce evidence in behalf of the government. Over objection, he presented what he said was a statement by Baldwin, neither dated, signed, nor verified, that Baldwin had purchased pamphlets, which are material matter. Likewise over objection, Andrews presented pamphlets which he said were those referred to in the statement, in an admitted receipt from the alien to Baldwin, and in the testimony of the alien at the hearing before Baldwin. Statement, receipt, and testimony are indefinite, save that the second and third are

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that some pamphlets, undefined save some by title, in the third, were sold by the alien to Baldwin. These pamphlets are assumed to be of I. W. W. and Communistic philosophy, and some of them contain scant references indicating approval of sabotage. In endeavor to obviate objection to the pamphlets, Andrews interrogated Bolling, whose testimony, rather confused and conflicting, is that after the hearing began he had purchased some pamphlets, like some introduced as aforesaid, from the alien; that the purchase was made at a hall where met a labor union branch of the I. W. W., of which the alien is secretary.

The importance of the pamphlets and due proof of them is indicated by the Secretary of Labor's decision of February 5, 1920, that against the alien the "charges are sustained by proof that he sold a number of I. W. W. publications in the record, which advocate and teach the unlawful destruction of property." The alien requested that Baldwin be produced for cross-examination. Andrews expressed willingness, provided the alien state in writing what was expected to be proven by Baldwin and arrange for the latter's compensation. This the alien refused. Department rule 24 provides that the alien shall have opportunity to cross-examine those who have testified for the government, and that the conditions aforesaid imposed by Andrews apply to witnesses for the alien for whom he desires subpoenas.

[1] The alien submitted no evidence. That the proceedings were unfair and prejudicial, and denied due process of law to the alien, is clear. Not only general principles of law were violated, but also the department's rules. These latter, in so far as consistent with law, are themselves law, and, be it noted, law for government—for the department—as well as for aliens. In connection with the general law of the land, the rules constitute for aliens in deportation proceedings the due process of law guaranteed by the federal Constitution to all men. The object is obvious, viz. so that the "vast power of the Secretary of Labor, judicial in its nature, capable of infinite abuse and tyranny, little restrained by the constitution, procedure, publicity, responsibilities, and traditions that hedge about a court, and little controlled, save by his honor and conscience" (Tam Chung [D. C.] 223 Fed. 802), shall "be administered, not arbitrarily and secretly, but fairly and openly, under the restraints of the tradition and principles of free government applicable where the fundamental rights of men are involved." Kwock Jan Fat v. White, 253 U. S. 464, 40 Sup. Ct. 566, 64 L. Ed. 1010. All to the end that trials result in justice, with what is of only lesser importance, an appearance of justice.

[2] In addition to the unsupported warrant, the alien a witness against himself, quasi secret rather than open and public hearings, which it is not determined of themselves alone would be fatal to fairness, there is flagrant disregard of the department's rules and of the general law of evidence and procedure. The object of rule 22, to enable the alien to prepare for hearing and therein to have counsel, not partially, but throughout, was defeated, probably in conformity to the secret circular of the time, and set out in the Colyer Case (D. C.) 265 Fed. 46.

So, too, the great test of truth, cross-examination of adversary witnesses, provided by rule 24, was denied the alien. The conditions

precedent imposed by Andrews, by the rule, relate to the alien's witnesses, and not to the government's witnesses. To disclose what the alien expects to prove by cross-examination is subversive of the object of cross-examination, is violative of settled procedure, and is contrary to said rule. In re Jackson (D. C.) 263 Fed. 110.

[3] In deportation hearings, if the department resorts to statements, whether or not verified, by inspectors and others, failing to produce the makers of the statements for the alien's cross-examination, it cannot escape the consequences of ex parte and incompetent evidence by any plea of distance and expense. Without cross-examination, too often the alien is helpless. U. S. v. Uhl (C. C. A.) 266 Fed. 38 is illustrative. Therein the alien was deported upon a charge like that of the instant case, and the only evidence thereto was an affidavit that the alien had been heard to say that if "the strike is not settled" he would "blow up the shops." The alien, examined on oath at the hearing, denied he had said it. The maker of the affidavit, whom the inspector later said was "a private detective hired by the city" of the strike, was not produced nor requested to be produced for cross-examination— "out of town," and the affidavit prevailed over the alien's denial.

The application of settled principles of finality of the department's decisions upon conflicting evidence, certainly strained to the limit, denied the alien the relief of habeas corpus. The frequent great injustice in deportation proceedings in part has been incited by a theory that obsessed the department that it is enough to accuse the alien to justify deportation, if he cannot show cause to the contrary; that is, that the government need not prove him guilty, but, on the contrary, he must prove himself innocent.

This is seen in rule 22, paragraph 5, which provides that, the alien arrested, he shall have a hearing to "show cause" why he should not be deported; the warrant of arrest is likewise. Baldwin so advised the alien, and upon that pretense virtually made him a witness against himself, and Andrews insisted the hearing should so proceed, desisting only upon counsel's vigorous assertion of the alien's rights. But though the theory be ostensibly receded from, who can tell to what extent the obsession secretly affects procedure, consideration, and weight of evidence, and decision—to what degree it prejudices the alien's case? It is the psychology of executive power that would be arbitrary everywhere and responsible nowhere. In justice to the inspectors, they but obeyed instructions of the time, secret instructions, intended to take an unfair advantage of aliens rightfully relying upon public law and rules. Comment is unnecessary. And that injustice aforesaid, doubtless only partly disclosed by many cases in the books, is responsible for the argument advanced that too often it is in relation to controversies between employers and employees, is a recognized strategy in breaking strikes, and that the employers' interests are the occasion of both exercise and abuse of the power of deportation.

In the instant proceedings is evidence indicating a like controversy involving the union or I. W. W. and petitioner. Departmental witnesses, government agents, testify to some association with employers' agents, and one frankly states that in Butte is "unquestionably some

grounds" for labor agitation. It well may be that strike zones afford "good hunting"—where passions aroused incite men to inconsiderate and violent speech, which, if by aliens, may serve as sufficient evidence to uphold a decision of the department for deportation.

[4] But the argument, however potent it might be before the department or Congress that controls the department, is of no avail in court; for the law is that, if the proceedings are supported by substantial evidence and fair, the department's decision is conclusive upon the courts. At the same time every thoughtful person must deplore even a semblance of justification for the argument. In it is obvious evil and danger, that ought to be avoided and can be avoided, but only by public, humane and just administration of the law of deportation.

[5] As a corollary to the rule aforesaid, the law also is that, if the proceedings are without the support of substantial and competent evidence or otherwise unfair, the department's adverse decision is subject to review in the courts, and to be defeated by habeas corpus in release of the alien. That is this case.

Writ granted.