**UNGAR v. SEAMAN, Immigration Inspector.**
**HUSMAN v. SAME.**

(Circuit Court of Appeals, Eighth Circuit. December 17, 1924.)

Nos. 6325, 6326.

**1. Aliens ⬩⬩⬩46—Member of "Communist party" is subject to deportation.**

The Communist party is an organization which entertains a belief in the overthrow by force or violence of the government of the United States, and membership in that party by an alien at the time of his entry is ground for his deportation.

**2. Aliens ⬩⬩⬩54—Constitutional law ⬩⬩⬩318—Requisites of proceedings for deportation.**

In proceedings for deportation of an alien who has been a lawful resident of the United States, he is entitled to a hearing and decision of the charges against him according to the fundamental principles that inhere in due process of law, and indispensable requisites of such hearing are that the course of proceeding shall be appropriate to the case and just to him, that he shall be notified of the charge against him in time to meet it, shall have an opportunity to be heard and to cross-examine the witnesses against him, and shall have time and opportunity, after the evidence against him is produced and known to him, to produce evidence and witnesses to refute it, and that the decision shall be governed by and based upon the evidence at the hearing.

**3. Aliens ⬩⬩⬩54—Orders of deportation held not supported by competent evidence.**

Orders for deportation of resident aliens, based in part on the recommendation of an inspector after an unfair hearing, at which in-

competent and hearsay evidence was received, without giving the aliens opportunity to cross-examine the witnesses, and in part on confidential reports of agents of the department, *held* unauthorized and illegal.

**4. Aliens ⚖=54—Constitutional law ⚖=318—Hearing in deportation proceedings held unfair.**

Questioning of a resident alien by the arresting officer, immediately after his arrest and while in custody, without notice of the charges against him, and when he was without counsel, or time or opportunity to prepare to meet the real charge against him, and the use of his answers as evidence on a subsequent hearing, violates the basic requirement of due process and fair hearing.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Petitions by Nicholas Ungar and Herman Husman against Charles W. Seaman, Immigration Inspector, for writs of habeas corpus. Judgment discharging the writs, and petitioners bring error. Reversed, and causes remanded for further hearing.

Arthur Le Sueur, of St. Paul, Minn., for plaintiffs in error.

William Anderson, Asst. U. S. Atty., of St. Paul, Minn. (Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., on the briefs), for defendant in error.

Before SANBORN and LEWIS, Circuit Judges, and SCOTT, District Judge.

SANBORN, Circuit Judge. These cases were argued and submitted to this court at the same time and by the same counsel. In each case the plaintiff in error, an alien, was arrested about January 2, 1920, by an officer of the Department of Justice, charged with being a member of or affiliated with an organization that entertains a belief in the overthrow by force or violence of the government of the United States, and with being a member of or affiliated with an organization that advocates and teaches the overthrow by force or violence of all forms of law. Act Oct. 16, 1918, c. 186, § 1; section 4289¼ b (1), U. S. Compiled Statutes 1919 Supplement. Each of them was questioned in respect to the charges against him before he had any lawful hearing. Subsequently each of these aliens had a hearing before an examining inspector, when he was questioned and other evidence was received relative to the charges against him. The inspector in each case reported the evidence at this hearing to the Assistant Secretary of Labor, who finally found that the accused was a member of the Communist party of the

4 F.(2d)—6

United States, and issued a warrant for his deportation, under which each of the plaintiffs in error was arrested and held, when each of them presented a petition for a writ of habeas corpus to the court below; that court issued the writ in each case; the officer in charge of them answered the petition for the writ, that he held them under the warrants of deportation; the court below heard the evidence and the arguments of counsel on the issues presented by the writs and returns, and dismissed the writs. Thereupon the aliens sued out writs of error and presented their cases to this court.

In this court these cases present two questions: (1) Was there any substantial evidence, at the hearing before the examining inspector upon which the warrants of deportation were based, that these aliens were members of or affiliated with the Communist party of America in 1919 or 1920? and, (2) was the hearing before the inspector in either of these cases unfair or prejudicially affected by the abuse of the discretion or the arbitrary action of the examining inspector, the Assistant Secretary of Labor, or other executive officer? The court below answered these questions in the negative, and these answers are assigned as error.

[1] Whether or not the weight of the evidence in substantial conflict sustained the charges against the accused was a question in the exclusive jurisdiction of the immigration officers, and their decision of that question is not reviewable by the courts. The warrants for the deportation of these aliens rest on the evidence at their hearings and the findings of the Assistant Secretary of Labor that they were in 1919 and 1920 members of or affiliated with the Communist party of America. It is now settled that this Communist party was an organization that entertained a belief in the overthrow by force or violence of the government of the United States and advocated and taught the overthrow by force or violence of all forms of law. Skeffington v. Katzeff (C. C. A.) 277 F. 129, 133; Antolish v. Paul (C. C. A.) 283 F. 957, 959.

At the hearing under the warrant of arrest before Inspector Holton, where Mr. Ungar was represented by counsel, he testified in answer to questions by the inspector that he joined the Socialist party in 1912, and continued to be a member until the Communist party of America was organized; that he voted to change the name of the Socialist party to the Communist party of America; that he lost his membership card; that he got a membership card in the Com-

munist party of America in October, 1919; that he paid dues therein for October and November; that he was not a member at the time he was testifying; that he was two months in arrears in the payment of his dues; that, if it had not been for the raid, he supposed he would have been in good standing at the time he was testifying; that he was in good standing at the time he was taken into custody; and that he would not belong to a party unless he knew what it stood for. Although Mr. Ungar subsequently testified that he did not believe in or advocate many of the theories and. teachings of the Communist party, we cannot hold, in view of that part of his testimony which has been recited, that the court below was in error in its conclusion that there was substantial evidence at the hearing before the examining inspector that he was, at the time the charge was made against him in 1919 or 1920, a member of and affiliated with the Communist party.

We turn to the case of Mr. Husman. His hearing on the warrant for his arrest was had before O. B. Holton, examining inspector, on January 5, 1920. In answer to questions by the inspector he testified that he was a member of the Communist party of America, and had·been ever since it started; that he was one of the members. of the Socialist party when it split and went over to the Communist party in September, 1919. He then declined to testify further without counsel, and an adjournment was taken to January 13, 1920, when the examination of Mr. Husman by. the examining inspector continued in the presence of .his counsel. The inspector read to him the report of Mr. A. F. Kearney, the officer who arrested him, of an examination which he made of him immediately upon his arrest, and asked him if the report was correct, and Mr. Husman testified that the report seemed to be correct. That report was then introduced in evidence before the examining inspector. It contained the statements that Mr. Husman had told Mr. Kearney that he was a member of the state committee of the Communist party and was a delegate at the state Communist convention—the state Socialist convention it was at that time—and that they voted to take the name of the Communist party; that he had a membership card in the Communist party in the English local in Minneapolis; that he had read the application for membership in the Communist party many times, and subscribed to the preamble; that he did not file an application for membership because under a resolution the mem-

bers of the English local went right ahead and changed the books, so that any member of the Socialist local would automatically become a member of the other, if he wished to. Mr. Husman then identified his membership card in the Communist party, with one stamp attached showing payment of his dues for October, 1919. This card was taken from his house without a search warrant. .He testified that he was chairman of the special convention of the Socialist party on October 5, 1919, until 8 p. m. The minutes of that convention were introduced in evidence, to the effect that a motion was adopted by that convention in these words: ·"That we recognize the principles and tactics of the Communist party of America as expressed in their manifesto, program, and constitution, and that we, as representatives of the Socialist party of Minnesota, in convention assembled, vote to affiliate with the Communist party of America, changing the name of our organization from the Socialist party of Minnesota to Communist party of Minnesota."

Mr. Husman testified that he voted for the separation, as he was instructed to do by his local. This review of the evidence leaves no doubt that there was no error in the finding of the court below that there was substantial evidence at the hearing before Inspector Holton that Mr. Husman was a member of and affiliated with the Communist party of America in 1919 or 1920.

The second question in this case is: Was either of the hearings of these aliens unfair or prejudicially affected by the abuse of the discretion or the arbitrary action of the inspector who conducted the hearing, the Assistant Secretary of Labor, or any other executive officer?

[2] The proceedings in these cases were not instituted to deport aliens who had entered the United States in violation of its laws. They had been lawfully residing here from six to eight years. Such aliens are entitled to hearings and decisions of the charges of offenses of which they are alleged to be guilty according to "the fundamental principles that inhere in due process of law." Indispensable .requisites of a fair hearing, according to these fundamental principles, are that the course of proceedings shall be appropriate to the case and just to the party affected; that the accused shall be notified of the nature of the charge against him in time to meet it; that he shall have such an opportunity to be heard that he may, if he chooses, cross-examine the witnesses against him; that he shall have time and op-

portunity, after all the evidence against him is produced and known to him, to produce evidence and witnesses to refute it; and that the decision shall be governed by and based upon the evidence at the hearing. McDonald v. Siu Tak Sam, 225 F. 710, 712, 713, 140 C. C. A. 584; Backus v. Owe Sam Goon, 235 F. 847, 852, 853, 854, 149 C. C. A. 159; In re Chan Foo Lin, 243 F. 137, 142, 156 C. C. A. 3; United States v. Sibray (C. C.) 178 F. 144, 147, 148, 149; Ex parte Radivoeff (D. C.) 278 F. 227, 230; Whitfield v. Hanges, 222 F. 745, 749, 751, 138 C. C. A. 199.

[3] In Mr. Husman's case the bill of exceptions discloses these facts: The finding of the Assistant Secretary of Labor, and the only finding on which the warrant of deportation is based, was: "Deportation is hereby directed for the charges in the warrant of arrest, as a member of Communist party." There was no mention of the Communist party in the warrant of arrest; no notice to Husman thereby that his membership in that party was the charge against him. The warrant of arrest was dated December 29, 1919. At that time and at the time of the hearing the courts had not authoritatively decided that the Communist party was an organization that entertained a belief in the overthrow by force or violence of the government of the United States, or that it advocated and taught the overthrow by force or violence of all forms of law. That was then an open and doubtful question, upon which able and learned judges differed as late as January, 1922. Coyler v. Skeffington (D. C.) 265 F. 17, 79, 80; Skeffington v. Katzeff (C. C. A.) 277 F. 129, 133.

The charges in the warrant of arrest were that the alien was a member of or affiliated with (1) an organization that entertains a belief in the overthrow by force or violence of the government of the United States; (2) an organization that advocates the overthrow by force or violence of all forms of law; (3) an organization that advocates the overthrow by force or violence of the government of the United States; (4) an organization that teaches the overthrow by force or violence of the government of the United States; (5) an organization that teaches opposition to all organized government; (6) an organization that entertains an opposition to all organized government. These general indefinite charges constituted no fair notice to this alien that he was called upon to meet the simple charge that he was a member of the Communist party, and

without any such notice, without any opportunity to procure or consult counsel and prepare to meet the real charge against him, the hearing before Mr. Holton lacked one of the indispensable attributes of a fair hearing. Nevertheless, without such notice and on the day or night of his arrest, three days before the hearing before the immigration inspector, without a chance to procure counsel, he was questioned at great length regarding the merits of his case by A. F. Kearney, agent of the investigating bureau, and Mr. Husman's answers were stated in a report made by Mr. Kearney.

Three days after this secret examination, while he was still in custody of these officials, he was brought before Mr. Holton, examining inspector, for the hearing on which the deportation warrant in his case is founded. There he was shown an affidavit of one T. E. Campbell, made on information and belief, that he was a member of the Communist party, and that such party was an organization which advocated the overthrow by force or violence of the government of the United States, and that affidavit of Mr. Campbell was by the examining inspector, Mr. Holton, placed in the record of his hearing. That affidavit was utterly incompetent as evidence against him, because it was based on hearsay, and was itself mere hearsay of hearsay, and because Campbell neither appeared nor testified to the facts stated in the affidavit, or to the fact that it was a true statement of the matters contained in it, and because the alien was deprived of his right to cross-examine Mr. Campbell and to be confronted with this witness of hearsay testimony against him. The examining inspector then, while the alien was still in custody and without counsel, questioned him, wrote down his answers regarding his relation to the Communist party, and made them a part of his report of the hearing.

As this hearing was continuing, and the inspector read to him from a newspaper called the "Communist," and asked him if his views coincided with those expressed in that paper, he declined to answer further unless he was permitted to procure counsel. Thereupon an adjournment was taken, and after he had procured counsel the examiner read to him the report of Mr. Kearney of his private examination of Mr. Husman immediately upon his arrest, and asked him if that report was correct, and he answered that it seemed to be. After this hearing had been completed Inspector Holton reported the proceedings before him and the evidence

he had taken to the Assistant Secretary of Labor, and recommended the deportation of Mr. Husman. About three months after the hearing closed, without notice to Mr. Husman or to his counsel, the Assistant Secretary of Labor requested one of his inspectors, who was not the examining inspector at the hearing, to make a further report upon Mr. Husman's case, and that inspector on July 24, 1920, made a report that he had learned from a confidential source that Mr. Husman had been quiet since his arrest, and whenever any discontent was voiced by others he had advised them to get educated and to read radical literature. This report apparently did not enable the Assistant Secretary to decide this case. He seems to have been still dissatisfied, and he called upon this inspector for a further report.

On December 3, 1920, this inspector reported that he had caused confidential inquiries to be made about Mr. Husman's activities, and was informed that he had discontinued attending the meetings of the I. W. W. and the Trades and Labor Assembly; that his informant was of the opinion that Mr. Husman, realizing that decision in this case depended on his activities, had during the past three or four months taken care not to do or say anything which would make him subject to an adverse report, hoping that the warrant proceedings would be canceled, but that his informant was of the opinion that in that event Mr. Husman would resume his former activities. The same inspector further reported on December 3, 1920, that several local labor leaders had been adjudged in contempt of court for disobedience of its order forbidding picketing of a local motion picture house and that, according to a newspaper report, Mr. Husman was one of the committee of seven appointed to report at a protest meeting. It was not until after these last reports of December 3, 1920, were received by the Assistant Secretary of Labor that on December 10, 1920, he decided that Mr. Husman was a member of the Communist party and should be deported.

The hearing in Mr. Ungar's case will not be reviewed at length. It was characterized by a like disregard of the indispensable requisites of a fair hearing. He was arrested and questioned immediately by the arresting officer without notice of the specific charge he had to meet, and without counsel, and this examination was unfair and unjust. At his hearing before the inspector on the warrant of arrest, the affidavit of Mr. Campbell, the arresting officer, that in the course of his personal investigation he was informed and believed that Mr. Ungar was an alien, a subject of Russia, that he was an active member of the Communist party, and that the Communist party was an organization which advocated the overthrow by force or violence of the government of the United States, was introduced in evidence against this alien over the objection of his counsel. It was not competent evidence, and its admission was grossly unfair, because it was based on hearsay, and was itself hearsay of hearsay and because Mr. Ungar was deprived of his right to be confronted with and to cross-examine Mr. Campbell.

[4] The facts that these aliens were arrested and immediately questioned by the arresting officer while they were in custody, without notice by the charges in the warrants of arrest or otherwise of the simple charge against them, without counsel, and without time or opportunity, before they were interrogated upon the merits of their cases, to prepare to meet the real charge against them, violated the basic requirement of due process and a fair hearing that the accused shall be notified of the charge against him before he shall be required to answer or commit himself upon the merits of his case, and that he shall be given time and opportunity to obtain counsel and to prepare to meet the charge against him. The introduction in evidence against the accused of the reports and affidavits of the officers who conducted these secret examinations of the contents of these unfair and unjust examinations violated the indispensable requirements of a fair trial, that the witnesses against the accused shall confront them and give the latter an opportunity to cross-examine them, and that hearsay is neither competent nor fair evidence against the accused. Backus v. Owe Sam Goon, 235 F. 847, 853, 149 C. C. A. 159; Ex parte Radivoeff (D. C.) 278 F. 227, 228, 229, 230.

The introduction and receipt by the Assistant Secretary of Labor, after the hearing was closed, without notice to or knowledge of the accused, of the hearsay statements of the immigration inspector to the effect that the alien was keeping quiet, but that if the warrant proceeding should be canceled he would resume his former activities, and that, according to a newspaper report, he was one of a committee of seven to report at a protest meeting against the decision of a court that certain strikers were in contempt of its order, was grossly unfair and unjust. The facts that the Assistant Secretary of Labor called for and caused

this evidence to be procured after the hearing of the alien had been concluded in January, 1920, and that seven days after the last of this evidence was reported to him on December 3, 1920, he rendered his decision against the accused leaves little doubt that this later evidence seriously affected his decision. Its receipt and consideration violated the indispensable condition of a fair hearing of a litigated issue that the case shall be decided on the evidence at the hearing, when parties or their counsel were present and that neither party nor court or quasi judicial tribunal shall subsequently receive evidence without notice to the party to be affected or their counsel and time and opportunity to rebut it.

It is not denied that the admissions of aliens when they are not under arrest, freely made to officers or other persons, established by the oral testimony of those officers or persons subject to cross-examination by the accused, may be received in evidence against them at their hearings before the immigration officers, and that such hearings are not bound in all things by the strict rules of evidence which prevail in the courts. But the secret questioning of these aliens by the arresting officers, immediately after their arrest, without counsel or opportunity to procure it, without plain notice of the specific violation of an act of Congress they were required to meet, and without opportunity or time to prepare to meet it, the admission in evidence of the reports of this secret questioning against them, without the presence or testimony of the reporting officers or any opportunity for the accused to cross-examine them, the receipt by the Assistant Secretary of Labor after the hearing was closed of hearsay evidence sought by him without the knowledge of the alien or his counsel, and the other proceedings to which reference has been made, deprived these aliens of the essential elements of due process of law, and rendered their hearings so unfair and unjust that they cannot be sustained.

The orders and judgments in these cases must therefore be reversed, and the cases must be remanded to the court below, with directions so to modify the orders challenged by the writs of error as to retain jurisdiction and custody of the aliens, subject, however, to bail, and to hear de novo and determine their cases on their merits, on such evidence and proof as the parties may offer under the warrants of arrest. It is so ordered. Whitfield v. Hanges, 222 F. 745, 756, 138 C. C. A. 199; In re Chan Foo Lin, 243 F. 137, 142, 156 C. C. A. 3.