**WEINBRAND v. PRENTIS, Immigration Inspector.**

(Circuit Court of Appeals. Sixth Circuit. March 6, 1925.)

No. 4213.

1. **Aliens** ⊜54—Findings in deportation proceedings not reviewable, unless alien was deprived of fair hearing.

Proceedings for deportation of an alien may be summary, and are not governed by the rules of pleadings and evidence in criminal trials, and on habeas corpus a court must accept the findings of fact of the immigration authorities, in the absence of deprivation of a fair hearing or other unfair action.

2. **Aliens** ⊜54—Taking of testimony, in absence of alien, held not to invalidate deportation proceedings.

The mere fact that deportation proceedings continued and testimony was taken in the absence of defendant, but after notice to his counsel, who had opportunity to be present, held not to invalidate the findings.

Appeal from the District Court of the United States for the Eastern District of Michigan; Charles C. Simons, Judge.

On petition of Harry Weinbrand against P. L. Prentis, Immigration Inspector, for writ of habeas corpus. Writ discharged, and petitioner appeals. Affirmed.

Arthur J. Abbott, of Detroit, Mich. (Abbott, Schoeffel & Coulter, of Detroit, Mich., on the brief), for appellant.

Frederic L. Eaton, Asst. U. S. Atty., of Detroit, Mich. (Delos G. Smith, U. S. Atty., of Detroit, Mich., on the brief), for appellee.

Before DENISON, DONAHUE, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This is an appeal from an order discharging a writ of habeas corpus involving deportation.

Appellant was born about the year 1893, in, and a citizen of, Russia. He entered the United States in the year 1906, and has resided here ever since. He is still an alien and is unmarried. Under warrant issued by the Second Assistant Secretary of Labor, August 28, 1922, appellant was arrested on a charge of being found in the United States in violation of the Immigration Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼a–4289¼u), in that "he has been found connected with the management of a house of prostitution, and that he has been found receiving, sharing in, and deriving benefit from the earnings of a prostitute." See section 19 of the act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj).

Following, and based upon, the hearing and report of the immigration inspector, the Second Assistant Secretary of Labor, on the 27th day of December, 1922, issued a warrant of deportation of appellant to Ukrania, on the ground that he had been found connected with the management of a house of prostitution, in violation of the laws of the United States. Writ of habeas corpus was issued by the District Court June 19, 1923, which, after hearing, was discharged November 12, 1923.

The alleged house of prostitution was a restaurant and rooming (or boarding) house in Flint, Mich., confessedly operated by appellant and one Schwartz, and at which liquor was regularly sold in violation of law. There was ample and direct testimony that, in connection with the management of the restaurant, prostitution was openly practiced by at least one girl (Davis), and tending to show that appellant and Schwartz were sharing in the avails of such prostitution. The hearing before the inspector embraced also the cases of Schwartz and Davis, both of whom were aliens and under deportation charges.

The testimony was largely heard on September 2, 1922, on which date appellant was present, was represented by counsel, and was examined by the inspector. The same is true of Schwartz and Davis. Four days later, on September 6, the testimony of two other witnesses was taken by the inspector in the absence of appellant and his counsel, and presumably in the absence of Schwartz and Davis. Appellant contends that the order of deportation is thereby invalidated.

[1] We cannot assent to the proposition that the mere fact that appellant was not present on September 6, is sufficient to invalidate. It is well settled that proceedings for the deportation of an alien under the immigration statutes may be summary, and are in no sense a trial for a crime or offense, nor governed by the rules of such trials as to pleadings and evidence; that even hearsay evidence is not inadmissible; that the decisions of executive officers charged with the execution of the Deportation Act, if arrived at after fair hearing and upon substantial evidence, and with no abuse of the discretion committed to them by the statutes, are final; and that on habeas corpus the court cannot decide controverted questions of fact, but must accept the findings of the immigration authorities in the absence of deprivation of fair opportunity to be heard or other unfair action. Low Wah Suey v. Backus, 225 U. S. 460, 468, 32 S. Ct. 734, 56 L. Ed. 1165: "In order to successfully attack by judicial proceedings the conclusions and orders made upon such hearings it must be shown that the proceedings were manifestly unfair, that the action of the executive officers was such as to prevent a fair investigation or that there was manifest abuse of the discretion committed to them by the statute. In other cases the order of the executive officers within the authority of the statute is final. United States v. Ju Toy, 198 U. S. 253; Chin Yow v. United States, 208 U. S. 8; Tang Tun v. Edsell, 223 U. S. 673." Siniscalchi v. Thomas (C. C. A. 6) 195 F. 701, 703, 115 C. C. A. 501; Frick v. Lewis (C. C. A. 6) 195 F. 693, 115 C. C. A. 493; 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967; Skeffington v. Katzeff (C. C. A. 1) 277 F. 129; Morrell v. Baker (C. C. A. 2) 272 F. 577.

On the other hand, the absence of fair opportunity to the immigrant to be heard in defense of the charges calls for reversal. Chin Yow v. United States, 208 U. S. 8, 28 S. Ct. 201, 52 L. Ed. 369; Whitfield v. Hanges (C. C. A. 8) 222 F. 745, 756, 138 C. C. A. 199; In re Chan Foo Lin (C. C. A. 6) 243 F. 137, 142, 156 C. C. A. 3. But the mere fact that the hearing proceeded in the absence of appellant, after full opportunity on his part to be present, is not sufficient to reverse. We think the rules of the criminal

law requiring the personal presence of the accused at the hearing have no application.

[2] The crucial question thus is whether appellant was practically denied opportunity to be present at the hearing on September 6th. We think this question must be answered in the negative. The report shows that, at the opening of the hearing on September 2d, all three of the aliens were informed that its purpose was to afford them an opportunity to show cause why they should not be deported to the country whence they came; the warrant of arrest being read, and each allegation contained therein being carefully explained to them. The report further shows that each person was then offered an opportunity to inspect the warrant of arrest and the evidence upon which it was issued, which privilege was not accepted. It further appears from the return that when appellant was questioned he was told by the inspector that he had the right to be represented by counsel, and upon inquiry whether he wished to be so represented appellant replied: "Yes, sir, I have engaged Attorneys Bishop and Johnson." The record then states: "(Attorneys appear for alien.)" The report shows that each of the other aliens made the same announcement, and that the same two attorneys appeared for them.

Preceding the examination of the two witnesses heard on September 6th, the inspector's minutes show "these witnesses could not be found at the time of the first hearing on September 2d, they having left town for over Labor Day"; also the following: "Attorney Bishop was communicated with, and stated that he could not be present at this examination, but had no objection to my going ahead with it. Attorney Johnson could not be located." Apparently the two witnesses examined on September 6th were those mentioned in the testimony of a police detective, at the hearing on September 2d, as having testified in justice's court in the proceedings for violation of ordinances hereinafter referred to. The gist of their testimony as there given was stated by the detective, and fairly corresponds with the ultimate substance of that later given by the witnesses in question before the inspector on September 6th.

If Attorneys Bishop and Johnson both represented appellant, we think he cannot complain that both were not communicated with, in view of the failure to locate one of them and the statement made by the other. We must assume that the inspector believed such to be the case. Indeed, in his supplementary return to the writ of habeas corpus, that officer stated that on the adjourned date, September 6th, the attorney for petitioner was informed by telephone that additional testimony would be taken, and thereupon advised the inspector that he did not care to attend. Although appellant, in his traverse to the inspector's return, states that Bishop was attorney for Schwartz and Johnson attorney for appellant, we find no denial of the accuracy of the statement in the record that appellant announced that both those gentlemen were his attorneys, and that both appeared as such for him. The record before us is barren of any testimony of either Johnson or Bishop in derogation of the inspector's record.

Accepting, as we must, the truthfulness of the record before us, there is nothing to indicate that the hearing on September 6th was a secret or star-chamber proceeding. The inspector reports that his conclusions were predicated upon the testimony of September 2d. While it is to be assumed that the testimony of September 6th was also taken into account, it is true that that given on September 2d was sufficient to sustain the inspector's ultimate conclusions, and thus that the testimony of September 6th was merely cumulative.

Appellant also alleges, as against the correctness and effect of the inspector's conclusions, the acquittal on August 28, 1922, of the Davis girl under a charge, based upon an ordinance of the city of Flint, of resorting to a house of ill fame at the place here in question; also the acquittal on September 5, 1922, of the same woman upon a charge, under the city ordinance, of being a common prostitute; also the acquittal on August 30, 1922, of appellant of a charge, also under an ordinance of the city of Flint, against appellant and a girl named Blaine, of indecent and disorderly conduct, by occupying the same bed for immoral purposes at the location stated, the parties charged not being married.

It should go without saying that neither of these acquittals is a technical adjudication as against the correctness of the charge on which the deportation in question was based; nor do such acquittals furnish assurance of unfairness in the inspector's decision of the question of fact involved in the deportation proceedings. Indeed, with respect to at least one of the charges against the Davis girl, an officer testified on the inspector's hearing that the acquittal was based on a technicality, in that it did not appear that the place in question was reputed to be a disorderly

place, and in the proceeding against appellant and the Blaine girl the latter pleaded guilty and received sentence.

In the findings made in the deportation proceedings, subsequent to the acquittals referred to, the inspector says that the Davis girl "was acquitted by a jury on the technical charge of resorting to a house of ill fame for the purposes of prostitution, and also being a common prostitute; but if her admissions to police officials and to me, made freely and without restraint of any kind, are to be regarded at all, it brings this case within the purview of section N, rule 22."

Upon a careful consideration of the record, we are unable to conclude that appellant has failed to receive a fair trial and fair opportunity to be heard in his defense. We are the better satisfied with this conclusion from the fact that the record raises a substantial doubt whether, if appellant had been advised that the two witnesses in question were to be examined on September 6th, he would have cared to be present. He nowhere says that he would. Presumably he heard the testimony of the police detective, given at the hearing of September 2d, as to the substance of the testimony given by the two witnesses in question at the trial of the justice's court case. Not unnaturally, appellant would have been otherwise informed of that testimony, if he did not actually hear it given. The record does not show when appellant learned that the two witnesses in question were examined by the inspector, although his pleadings in the habeas corpus proceedings, made several months before the dismissal of the writ, indicate that the complete record of testimony was then on file with the inspector, and presumably open to full examination. The record does not indicate that any request was made by appellant to reopen the proceedings to permit such cross-examination, or to present further testimony. Cf. Siniscalchi v. United States, supra, at page 705.

The order of the District Court, discharging the writ of habeas corpus, is affirmed.