### Ex parte VILARINO.

### Ex parte RADE.

District Court, S. D. California, Central Division.

Dec. 4, 1930.

John Beardsley, of Los Angeles, Cal., for petitioners.

Samuel W. McNabb, U. S. Atty., of Los Angeles, Cal. (Harry Graham Balter, Asst. U. S. Atty., of Los Angeles, Cal., of counsel; Harry Blee, U. S. Immigration Service, of Los Angeles, Cal., on the brief), for respondent.

HAZEL, District Judge.

These two cases were submitted together, and though the details are slightly different,

the charge against both relators, who concededly are aliens, and the grounds of their deportation, are the same. In each proceeding the aliens, Vilarino and Rade, were separately charged in the immigration warrants with residing in the United States in violation of the Immigration Act of October 16, 1918, as amended by Act June 5, 1920 (8 USCA § 137), in that both are members of the Communist Party—a society or group of persons who believe in, advise, and teach the overthrow of the United States government by force, and with being members of an organization engaged in publishing and circulating printed documents or writings advising and teaching the overthrow of the government by violent means. Separate hearings were accorded the aliens by the immigration inspector with the result that deportation to the country from whence they came, on findings, was recommended to the Secretary of Labor, who approved the findings of the inspector, and the warrants issued. Subsequently a writ of habeas corpus was granted on the asserted ground that a fair hearing was not had in that incompetent evidence was received; that right of counsel at all stages of the hearings was refused, and, moreover, that the right of cross-examination of witnesses testifying against relators was curtailed or denied.

A careful examination of the evidence and the law applicable thereto, in my opinion, does not support the claim of unfairness at any of the hearings. On the contrary, I find that the evidence was fairly adduced; that the right of counsel at the formal hearings was freely accorded the aliens; that cross-examination of witnesses against them was not refused; and, further, that neither of the relators was deprived of his constitutional rights.

I will now refer briefly to the cases specifically and amplify my conclusions. Vilarino is forty-five years old, was born in Coruno, Spain, and entered the United States in August, 1903, at the port of New York, and has continuously lived in this country since his arrival. He is married and has eleven children, all born in the United States. Following his arrest, at his formal hearing Vilarino was represented by counsel, as the record clearly shows. At the preliminary hearing he was not represented by counsel, and he denied membership in the Communist Party, but subsequently at the formal hearing he admitted his membership therein. A detective officer of the Los Angeles Police Department, who was a former member of the Communist Party, testified that the Communist Party believes in, advocates, and teaches the overthrow of the government of the United States by force or violence, and that the American organization is affiliated with the Third International of Moscow, Russia. Documents also were introduced in evidence, indicating that the object and purpose of the organization is to revolutionize our government by force and establish a proletariat dictatorship, and emphasizing the beliefs and aims of the Communist Party in this respect. Such testimony was properly adduced, I find, and forms a corroboratory basis for the conclusion reached by the immigration authorities. The Vilarino documentary exhibits were secured by search and seizure, and it is contended in his behalf that his constitutional rights were violated, since in their procurement his home was unlawfully invaded. There was evidence tending to show that the police authorities had reason to suspect Vilarino of committing the crime of syndicalism, a felony under the laws of the state of California. When the officers went to his home, presumably to arrest him, they were admitted by the wife of the alien, and on inquiry she disclosed to the officers the printed circulars which were seized and which were subsequently turned over by the police to the immigration authorities.

In the absence of a prearrangement or understanding between the police and the immigration authorities that the home of Vilarino should be invaded by them without a warrant of arrest or without a search warrant, and documents or papers found seized without probable cause for believing that a crime had been committed, there was no violation on the part of the immigration authorities of the relator's constitutional rights. The discovery of the printed papers or circulars by the police was incidental to the discharge of their duties in arresting the alien for a violation of a state law, and there existed no bar to the use of the exhibit evidence at the hearing. In a recent case in this jurisdiction, wherein the same objection was raised to considering evidence supplied by the police in an immigration case, Judge James substantially ruled that, where the police had reasonable ground to believe that a person arrested has committed a felony, the right existed to search not only the person of the accused, but also the room where he was found.[1] In this case the suspect was not present when his home was searched, but, even assuming the search without a warrant to have been unlawful in this

---

[1] Ex parte Fierstein. Order reversed 41 F. (2d) 53.

state, the immigration authorities are not shown to have directed the search or that an understanding existed to acquire evidence by unlawful means, and they were not required to make inquiry as to the manner in which the evidence was obtained. The police officers were not acting solely on behalf of the United States, and did not intend to initiate a prosecution in the federal court, as was the case in Gambino v. U. S., 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. 293, 52 A. L. R. 1381.

▮ Rade is shown to be a native of Italy, and he was arrested by the police at the Communist Headquarters, charged with engaging in criminal syndicalism, and at the time certain exhibits in evidence were taken from his person and subsequently submitted to the immigration authorities. No immigration official was present, and none, so far as the evidence discloses, directed the arrest and search of Rade's person without a warrant, or connived at any unlawful method of apprehending him. The evidence again showed the unlawful purpose and object of the Communist Party, and further that the seized papers, circulars, or pamphlets tended to corroborate the charge. It is claimed that the alien, while in jail, was improperly examined by the immigration inspector who obtained from him, as testified, corroboration of the testimony of the police officer Hynes, who made the arrest, that he was a member of the Communist Party. It is argued that the preliminary examination of the alien at the jail by an immigration inspector, regarding his membership, in view of his denial at the formal hearing, was arbitrary and unfair. His admissions, however, to the police officer Hynes, prior to the formal hearing, that he was a member of the Communist Party and that he had joined the organization at San Francisco, and his admission to the immigration inspector, were considered as outweighing his denial. The police officer and immigration inspector were cross-examined by counsel for the relator as to their conversations and the asserted admission, and the credibility of their testimony was for determination by the Secretary of Labor. Since there manifestly was evidence to establish the relator's membership in the Communist Party, the court is without power to reach a contrary conclusion. United States ex rel. Vajtauer v. Comm'r of Immigration, 273 U. S. 103, 47 S. Ct. 302, 71 L. Ed. 560. That it is not within the province of the court to review the findings of the administrative tribunal needs no citation of authority. Nor was it unfair to question the aliens preliminarily without the presence of their counsel,

and receive their statements. Chan Wong v. Nagle (C. C. A.) 17 F.(2d) 987; Plane v. Carr (C. C. A.)19 F.(2d) 470; In re Kosopud (D. C.) 272 F. 330.

The adjudication upon which reliance is placed by counsel for the relators (Ungar v. Seaman [C. C. A.] 4 F.(2d) 80) was decided on essentially different facts. In that case the learned court held the proceedings unfair because the alien was questioned without being informed of the nature of any charge, and ex parte affidavits were received in evidence without notice to him; while in Ex parte Radivoeff (D. C.) 278 F. 227, the warrant was issued without the alien being apprised of the evidence against him and without according to him the right of counsel and right of cross-examination.

My conclusion is that the respective hearings were properly conducted and in accordance with due process of law. The writ is therefore dismissed, and the petitioners remanded to the custody of the immigration authorities for deportation.