**HAYS, District Director of Immigration, v. SESTO.**

(Circuit Court of Appeals, Eighth Circuit. April 19, 1926.)

No. 7170.

1. **Aliens** ⬅54(10)—Hearing in deportation proceeding held fair, where alien was granted rehearing to cross-examine witnesses whose statements were added to testimony at former hearing, and all such witnesses testifying to material matters except one were cross-examined (Act Feb. 5, 1917, § 19 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj]).

Where rehearing was granted to alien sought to be deported, under Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), for purpose of cross-examining witnesses, whose statements had been added to testimony at hearing, and all such witnesses who testified to material matters were cross-examined except one, *held*, that alien was awarded fair hearing, notwithstanding board of review, in its opinion, erroneously referred to testimony of one of witnesses who was not cross-examined.

2. **Aliens** ⬅54(17).

In absence of fraud or mistake, courts will not review findings of Department of Labor in deportation proceedings on fact questions, if there is substantial evidence to support them.

3. **Aliens** ⬅54(9)—Evidence held to sustain charges in warrant for deportation that alien shared in earnings of prostitutes and was connected with managment of house of prostitution (Act Feb. 5, 1917, § 19 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj]).

Evidence *held* to sustain charges in warrant for deportation of alien under Act Feb. 5, 1917,

§ 19 (Comp. St. Ann. Supp. 1919, § 4289¼jj), that alien had shared in earnings of prostitutes and was connected with management of house of prostitution.

4. **Aliens** ⬅54(15).

Character of witnesses in deportation proceedings and conclusions as to their truthfulness must be determined by immigration authorities, and not by courts on habeas corpus.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Habeas corpus by Antonio Sesto against Frank Hays, Jr., District Director of Immigration. From an order sustaining the writ, and discharging petitioner from custody, the District Director of Immigration appeals. Reversed and remanded, with directions.

George A. Keyser, Asst. U. S. Atty., of Omaha, Neb. (James C. Kinsler, U. S. Atty., of Omaha, Neb., Ambrose C. Epperson, Asst. U. S. Atty., of Clay Center, Neb., and Andrew C. Scott, Asst. U. S. Atty., of Omaha, Neb., on the brief), for appellant.

William N. Jamieson, of Omaha, Neb. (E. D. O'Sullivan and C. J. Southard, both of Omaha, Neb., on the brief), for appellee.

Before STONE, KENYON, and BOOTH, Circuit Judges.

KENYON, Circuit Judge. Appellee (who will hereafter be termed petitioner) filed application for writ of habeas corpus in the District Court of the United States, District of Nebraska, Omaha Division, claiming that as an alien he was unlawfully deprived of his liberty by the district director of immigration, appellant (hereafter designated as respondent), for the purpose of being deported from the United States. The respondent, for answer to the application for said writ, set forth that he was holding petitioner under a warrant of arrest and a warrant of deportation issued by the Second Assistant Secretary of Labor. The warrant of arrest is as follows:

"United States of America, Department of Labor, Washington.

"No. 55210/431.

"To Inspector in Charge, Immigration Service, Omaha, Neb., or to Any Immigration Inspector in the Service of the United States:

"Whereas, from evidence submitted to me, it appears that the alien, Antonio Sesto, who landed at the port of New York, N. Y., ex steamship Sicilia, on or about the 1st day of June, 1904, has been found in the United States in violation of the Immigration Act

of February 5, 1917, for the following among other reasons: That he has been found managing a house of prostitution, that he has been found connected with the management of a house of prostitution, and that he has been found receiving, sharing in, or deriving benefit from the earnings of a prostitute.

"I, Robe Carl White, Second Assistant Secretary of Labor, by virtue of the power and authority vested in me by the laws of the United States do hereby command you to take into custody the said alien and grant him a hearing, to enable him to show cause why he should not be deported in conformity with law. The expenses of detention hereunder, if necessary, are authorized, payable from the appropriation, 'Expenses of Regulating Immigration, 1923.' Pending further proceedings, the alien may be released from custody upon furnishing a satisfactory bond in the sum of $2,500. For so doing this shall be your sufficient warrant.

"Witness my hand and seal this 26th day of March, 1923.

"[Signed]    Robe Carl White,
"Second Assistant Secretary of Labor."

The warrant of deportation is as follows:

"United States of America, Department of Labor, Washington.

"No. 55210/431.

"To Commissioner of Immigration, Ellis Island, N. Y. H., or to Any Officer or Employee in the U. S. Immigration Service:

"Whereas, from proof submitted to me, after due hearing before Immigration Inspectors Frank Hays, Jr., and J. M. Gurnett, held at Omaha, Neb., I have become satisfied that the alien, Antonio Sesto, or Tony Sesto, who landed at the port of New York, N. Y., ex steamship Sicilia on or about the 1st day of June, 1904, has been found in the United States in violation of the Immigration Act of February 5, 1917, to wit: That he has been found managing a house of prostitution, and that he has been found receiving, sharing in, or deriving benefit from the earnings of a prostitute, and that he has been found connected with the management of a house of prostitution, and may be deported in accordance therewith.

"I, Robe Carl White, Second Assistant Secretary of Labor, by virtue of the power and authority vested in me by the laws of the United States, do hereby command you to return the said alien to Italy, the country whence came, at the expense of the appropriation 'Expenses of Regulating Immigration, 1924.' You are directed to purchase transportation for the alien from New York, N. Y., to his home in Italy, at the lowest available rate, payable from the above-named appropriation. Delivery of the alien and acceptance for deportation will serve to cancel the outstanding release bond. For so doing this shall be your sufficient warrant.

"Witness my hand and seal this 31st day of January, 1924.

"[Signed]    Robe Carl White,
"Second Assistant Secretary of Labor."

The trial court held that the conclusion and order of the Commissioner of Immigration were not supported by any substantial evidence in proof of the charges adduced at either of the hearings, and the court therefore sustained the writ of habeas corpus and discharged the prisoner from custody. The matter is here upon appeal of respondent. Only two questions are involved, viz.: (a) Was petitioner accorded a fair hearing by the examining inspector? and (b) was there substantial evidence introduced at said hearing to prove the charges upon which the writ of deportation was based? These in their order.

The warrant of deportation was based upon section 19 of the Act of February 5, 1917, chapter 29 (Comp. St. Ann. Supp. 1919, § 4289¼jj), which provides: "Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute; any alien who manages or is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

This court has frequently passed on the question of what is necessary to constitute a fair hearing in proceedings of this character. In Whitfield et al. v. Hanges et al., 222 F. 745, 749, 138 C. C. A. 199, it is said: "Indispensable requisites of a fair hearing, according to these fundamental principles, are that the course of proceeding shall be appropriate to the case and just to the party affected; that the accused shall be notified of the nature of the charge against him in time to meet it; that he shall have such an opportunity to be heard that he may, if he chooses, cross-examine the witnesses against him; that he may have time and opportunity, after all the evidence against him is produced and known to him, to produce evidence and witnesses to refute it;

that the decision shall be governed by and based upon the evidence at the hearing, and that only; and that the decision shall not be without substantial evidence taken at the hearing to support it." Ungar et al. v. Seaman (C. C. A.) 4 F.(2d) 80; Svarney v. United States (C. C. A.) 7 F.(2d) 515; Gambroulis v. Nash, 12 F.(2d) 49 (opinion of this court, filed March 16, 1926).

The charges as set forth in the warrant are "that he has been found managing a house of prostitution, that he has been found connected with the management of a house of prostitution, and that he has been found receiving, sharing in, or deriving benefit from the earnings of a prostitute."

[1] After the arrest of petitioner he was accorded a hearing. His counsel appeared for the purpose of cross-examining witnesses, and he was given opportunity to produce any evidence he desired. The hearing occurred September 10, 1923. The proceedings were sent on to the Department of Labor at Washington, and it appears that after the hearing was concluded at Omaha certain statements were added to the testimony taken, being statements of Jack Ettario, Billie King, Mildred Stover, Louis Slobdinsky, Paul Taylor, Ben Elliott, Mrs. S. P. Jamieson, Lee Henry, and James Nelson. The Department of Labor granted a rehearing, and such rehearing was conducted in the Federal Building at Omaha, commencing October 17, 1923. Petitioner was represented by William E. Lovely, an attorney at law, and a full hearing was had extending over a number of days. Every opportunity to secure witnesses, to cross-examine witnesses, and to present petitioner's case was allowed. All of the parties who had made statements after the first hearing (which statements were sent on to the department, and which petitioner claims made the hearing unfair) were again examined, with the exception of Jack Ettario, Paul Taylor, and Mrs. S. P. Jamieson. Jack Ettario was subjected to a full examination at the first hearing. Paul Taylor was not produced at the rehearing, and could not be found. The statement of Mrs. S. P. Jamieson did not relate to any of the matters in dispute here, or throw any light upon the vital questions. Her evidence was of little consequence; so, with the exception of Paul Taylor, there was no witness in the hearings testifying to any matters of importance who was not subjected to complete cross-examination. The trial court was evidently satisfied that the hearing before the district commissioner was a fair hearing, for it said in its opinion: "Being an alien Italian, he stands committed for depor-

tation to the country from whence he came by department order made against him upon testimony adduced at the hearing and rehearing duly accorded him in all respects as provided by law."

If the matter stood alone on the statements produced after the first hearing was concluded and sent on with the proceedings to the Department of Labor at Washington, the charge of an unfair hearing might well be made; but in view of the fact that all these parties making statements, with the two exceptions heretofore pointed out, were subjected to complete examination and cross-examination under oath, and the further fact that the board of review seems to have based its final opinion upon the oral evidence introduced, there is no foundation whatever for any claim that the rehearing was not a fair hearing. It is true the board of review in its opinion referred to the testimony of John Gilott. This was error, as this party made a statement and did not testify; his statement, however, being of very little importance, and merely relating to matters fully covered by the evidence.

[2] The real question in the case is whether there was substantial evidence presented at the hearings before the district immigration inspector to support the charges of the warrant. That is the law question herein involved. Whitfield, Immigrant Inspector, et al. v. Hanges et al., 222 F. 745, 138 C. C. A. 199. It is settled by practically an unbroken line of authorities that courts will not review the findings of the Department of Labor in these deportation cases on fact questions, if there is substantial evidence to support them; fraud and mistake being absent. Skeffington v. Katzeff (C. C. A.) 277 F. 129; Wong Fook Ngoey v. Nagle (C. C. A.) 300 F. 323; United States v. Tod (C. C. A.) 300 F. 913; Ungar v. Seaman (C. C. A.) 4 F.(2d) 80; Weinbrand v. Prentis, 4 F.(2d) 778; Svarney v. United States (C. C. A.) 7 F.(2d) 515; Gambroulis v. Nash, supra.

[3] A statement by Mildred Stover was attached to the record of the case after the first hearing, and sent on with other statements to the Department of Labor at Washington. After that she made an affidavit in the office of Mr. Lovely, counsel for petitioner, that portions of that statement were untrue. Upon the rehearing she was called as a witness and placed under oath. We quote from a part of her cross-examination conducted by petitioner's counsel:

"Q. You never saw Antonio Sesto take money from prostitutes did you? A. Yes; I think I have.

"Q. You say you think you did; you do not know then whether you did or not? A. Well, I did.

"Q. From whom did you see him take money? A. From the girls who were working there at the hotel.

"Q. Girls employed in the hotel as prostitutes? A. Yes; they came there."

She stated in this examination that she made the affidavit in the office of counsel for petitioner because she was afraid of petitioner; that threats had been made against her by him, and she did not doubt he would have harmed her, unless she did make that affidavit; and that the statement therein that she had not said she had seen petitioner receive money from prostitutes was not true. There is evidence to warrant the fear upon her part which she claims induced her to make the affidavit. Her last statement, made under cross-examination and under oath, is in accord with her first statement that she made to the inspector.

[4] Counsel claim she should not be believed, and that her evidence should fall, because she is a prostitute. It is not for us to weigh her evidence. The character of the witnesses and conclusions as to their truthfulness are for the consideration and determination of the immigration authorities. Wong Shee v. Nagle (C. C. A.) 7 F.(2d) 612. If her evidence is true, there was ample to sustain the charges of the warrant, especially the charge that petitioner had been found receiving, sharing in, and deriving benefit from the earnings of a prostitute. The immigration inspector evidently concluded her testimony at the rehearing was true. Without further quotation therefrom, we may say we are entirely satisfied there was substantial evidence to sustain the charge, not only that petitioner was sharing in the earnings of prostitutes, but also that he was the manager for a while of the hotel, and that it was in fact a house of prostitution.

The trial court was in error in sustaining the writ of habeas corpus and discharging petitioner from custody under the warrant of arrest and the warrant of deportation issued by the Department of Labor. The order of the District Court in so discharging petitioner from such detention is reversed, and the case is remanded, with instructions to vacate said writ of habeas corpus and take such steps as may be proper to remand petitioner to the custody of the proper officers of the Department of Labor for deportation according to the deportation warrant.

Reversed and remanded.