## Ex parte JURGANS.

(District Court, D. Minnesota, Fourth Division. February 16, 1927.)

1. **Constitutional law ⬦318—Deportation without fair hearing, or on unsupported charges, is denial of due process.**

Deportation without a fair hearing, or on charges unsupported by any evidence, is a denial of due process, which may be corrected by habeas corpus.

2. **Aliens ⬦54(17)—Fact findings in deportation proceedings, if supported by evidence, will not be reviewed.**

Findings of fact in deportation proceedings, supported by substantial evidence, will not be reviewed, in the absence of fraud or mistake.

**3. Aliens ⬌54(9)—Evidence in deportation proceedings held to support conclusion that alien was member of and affiliated with organization advocating and teaching overthrow of government and law (Comp. St. §§ 4289¼b [1]—4289¼b[3]).**

Evidence in deportation proceedings *held* to support conclusion of Secretary of Labor that alien was a member of or affiliated with an organization advocating and teaching the overthrow by force or violence of the government of the United States and all forms of law, in violation of Act Oct. 16, 1918 (Comp. St. §§ 4289¼b [1]—4289¼b[3]).

**4. Aliens ⬌54(10)—Denial of fair hearing in deportation proceedings held not established (Comp. St. § 4289¼b[1]).**

In deportation proceedings under Act Oct. 16, 1918, § 1 (Comp. St. § 4289¼b[1]), refusal to permit alien's attorney to make motions or objections, admission of incompetent testimony, denial of assistance of counsel, arrest without warrant, or lack of notice of charge, resulting in an unfair hearing, *held* not established.

**5. Constitutional law ⬌318—Receipt and consideration of incompetent evidence in deportation proceeding does not establish want of due process (Comp. St. § 4289¼b[1]).**

That incompetent evidence was received and considered in deportation proceeding under Act Oct. 16, 1918, § 1 (Comp. St. § 4289¼b [1]), does not establish a want of due process.

**6. Aliens ⬌54(6)—Warrant of arrest issued by Secretary of Labor need not comply with rules governing indictments in criminal actions.**

Charges contained in a warrant of arrest issued by the Secretary of Labor need not comply with all the rules governing indictments in criminal actions in the United States courts.

**7. Aliens ⬌54(10)—Hearings in deportation proceedings need not be conducted with formality of court proceeding (Comp. St. § 4289¼b[1]).**

Hearings before immigration inspectors in deportation proceedings under Act Oct. 16, 1918, § 1 (Comp. St. § 4289¼b[1]), need not be accompanied by all the formality of a court proceeding.

Habeas Corpus.    Proceeding by William Martin Jurgans, an alien, to secure relief from order for deportation.    Writ dismissed.

Arthur LeSueur, of Minneapolis, Minn., for petitioner.

Lafayette French, Jr., U. S. Atty., and Leland W Scott, Asst. U. S. Atty., both of St. Paul, Minn., opposed.

JOHN B. SANBORN, District Judge. Under the Act of October 16, 1918, c. 186, § 1 (section 4289¼b[1], United States Compiled Statutes, 1919 Supplement), and on February 12, 1920, John W. Abercrombie, Acting Secretary of Labor, issued a warrant for the arrest of William Martin Jurgans, an alien, reciting:

"Whereas, from evidence submitted to me, it appears that the alien, William Martin Jurgans, who landed at an unknown port, on or about the 1st day of January, 1919, has been found in the United States in violation of the Immigration Act of October 16, 1918, for the following among other reasons: That he is a member of or affiliated with an organization that entertains a belief in the overthrow by force or violence of the government of the United States; that he is a member of or affiliated with an organization that advocates the overthrow by force or violence of all forms of law; that he is a member of or affiliated with an organization that advocates the overthrow by force or violence of the government of the United States; that he is a member of or affiliated with an organization that teaches the overthrow by force or violence of the government of the United States; that he is a member of or affiliated with an organization that teaches opposition to all organized government; and that he is a member of or affiliated with an organization that entertains opposition to all organized government."

This warrant commanded Charles W. Seaman, inspector in charge, Minneapolis, Minn., to take said alien into custody and grant him a hearing to enable him to show cause why he should not be deported in conformity with law.    This warrant was issued upon the request of the inspector in charge, who, in support of his application, attached a statement of the alien made on January 10, 1920, to T. E. Campbell, special agent in charge, Department of Justice, St. Paul, in which the alien gave his name, his age, and stated that he was married; that he had two children; that they and his wife lived in Russia; that he came to the United States in 1913, in July; that he does not belong to the Socialist party; that he did belong to it before it went over to the Communist party; that he belonged to the Lettish branch of the Socialist party; that that branch probably voted to join the Communist party; that he was not at the meeting at which they changed the name of the Socialist party to Communist party; that Charles Dirba was the secretary of his branch; that he never signed an application blank; that he signed no blank application of any kind; that he thinks he was dropped before they went over to the Communist party; that he was not a delegate of his branch to the state Socialist convention; that he was not at the

state convention; that he never has taken out any papers in this country. Other information was also furnished by Mr. Seaman, indicating that Jurgans was a member of the Communist party.

The alien was arrested on the 9th day of January, 1920, and gave bail January 13, 1920, in the sum of $1,000. On January 16, 1920, his counsel filed notice that he appeared for the alien. The hearing before R. F. Davis, examining inspector, was held on February 25, 1920. The alien was then represented by the same counsel who gave the notice. Jurgans was first sworn. The record then recites that the transcript of evidence taken by T. E. Campbell, chief of the Investigating Bureau of the Department of Justice, on January 10, 1920, "on which the warrant of arrest in this case was based, is handed to the attorney and is hereby made a part of this record, marked Exhibit A."

Thereupon the testimony of the alien was taken. It is unnecessary to state it in detail. It showed that the alien was born in Russia and was a citizen of that country; that he came to the United States in July, 1913; that he belongs to the Communist party; that he was a member of the Lettish local of the Socialist party, which became a part of the Communist party; that he attended the meeting of the Socialist party in Minneapolis, October 5, 1919, as a member of his local; that he voted to affiliate with the Communist party in accordance with his instructions. He denied believing personally in the overthrow of government by force; denied signing any application for membership in the Communist party, or paying dues. He stated that he had made no attempt to withdraw from the Communist party.

The inspector then made a part of the record, for the purpose of establishing the character of the organization as one within the purview of the Act of October 16, 1918, Exhibits 1 to 8, inclusive, attached to the case of Martin Abromovitch, Bureau File No. 54709/756, copies of which were produced at the hearing and attached to the record. The inspector who conducted the hearing made the following findings and memorandum:

"From the foregoing evidence it is found that William Martin Jurgans is an alien, namely, a citizen of Russia; that he came to the United States in July, 1913, and has not become a citizen thereof. It is further shown that William Martin Jurgans has been found to be unlawfully in the United States for the reasons alleged in the warrant of arrest in his case, he having admitted, and it having been shown by documentary evidence, that he belongs to an organization, membership in which brings him within the purview of the Act of October 16, 1918. It is respectfully recommended that a warrant of deportation issue in this case.

"Memorandum.

"*Citizenship.*—The above named is a citizen of Russia, of the Lettish race; he came to the United States in July, 1913, and has never declared his intention to become a citizen (pages 1, 2).

"*Civil Status.*—Married; wife and two children in Russia when last heard from (pages 1, 2).

"*Draft Status.*—Registered for the draft and never classified. Claimed exemption on account of being an alien (page 19).

"*Affiliations.*—Member of the Socialist party, Lettish local (page 2), and went with it to the Communist party, being present as a delegate at the state convention of the Socialist party October 5, 1919 (page 3); at this convention he voted to change the name of the Socialist party to the Communist party, as per his instructions from the Lettish local (page 5); outside of his instructions, he personally approved of this action (page 5); admits membership in Communist party (page 2).

"*Belief.*—This man believes that free speech and free assemblage is denied in the United States (page 18); that the working class is oppressed by the state (page 17); would permit aliens to vote (page 19); states he does not believe in violence (page 20), and that he has a constitutional right to remain in this country.

"*Conclusion.*—It is believed that a careful examination of this record will convince one that this man is a dangerous radical. He is very free to express his views and opinions, which are not in accord with those of one who believes in this government."

On March 8, 1920, Mr. Seaman forwarded to the Commissioner General of Immigration, Department of Labor, Washington, D. C., the inspector's memorandum and finding, the brief of counsel for the alien, copy of the warrant of arrest, Exhibit A, the alien's statement of January 9th to Agent Campbell, and Exhibit B, the minutes of the meeting of the state convention of the Socialist party of October 5, 1919. Mr. Seaman stated in his letter, forwarding these documents, that he concurred in the recommendation of Inspector Davis that the alien be deported.

The Commissioner General, on March 12, 1920, made a memorandum for the Assistant Secretary of Labor, in which he recommends that the department issue its warrant for deportation, which, among other things, recites:

"The evidence submitted and adduced establishes, and the bureau finds, that this alien is in the United States in violation of law (Act of October 16, 1918), and is subject to deportation therefor; this on the ground, and it is so found, that he is a member of or affiliated with an organization that entertains a belief in, advocates, or teaches the overthrow by force or violence of the government of the United States, and that he is a member of or affiliated with an organization that advocates the overthrow by force or violence of all forms of law. It is therefore recommended that the department issue its warrant for his deportation on these grounds, such deportation to be to Russia at government expense."

On March 18, 1920, the Assistant Secretary of Labor issued a memorandum and order for the Commissioner General of Immigration. In this, among other things, he recites that it conclusively appears that the alien is a member of the Communist party; that the Secretary of Labor has already held that the Communist party is an organization within the purview of the act. The memorandum then recites:

"Upon that interpretation of the Communist party documents and the fact, hereby found, that the alien in the present case is a member of the same Communist party, and upon that fact and that interpretation alone, it is hereby directed that the alien be deported. To enable the alien to conserve any rights he may have under the law in consequence of this administrative decision, let all proceedings be suspended for 30 days. Meanwhile transmit a copy of this memorandum for his information to the alien's counsel, Arthur Le Sueur, Esq., 917–918 Pioneer Building, St. Paul, Minn."

The memorandum was then sent to counsel for the alien on the 19th day of April, 1920, and he was advised that the department had deferred further action for the period of 30 days. In the original brief filed for the alien, and which was transmitted to the Commissioner General of Immigration, the following statement was made:

"If the department deports for membership in the Communist party alone, disregarding the attitude of the original alien, then there is doubtless little good to be accomplished by argument for this man."

On April 23, 1920, counsel argued that the alien was not, as a matter of fact, a member of the Communist party, for the reason that he had signed no application and paid no dues; that his testimony indicates that he had no knowledge as to the proscribed principles of the Communist party, and that he was guilty of no activities in connection with his affiliations with that party. In his concluding paragraph, counsel says:

"There is one more point to which I wish to call your attention in this case. It is this: The bail money put up for this alien is his own; and therefore arrangements should be made to return the bail to the alien, should he be deported, prior to his deportation, as he will want to take this with him. He has informed me that he does not desire to test this matter in court, if the decision be against him. He is more of a political Socialist than any other one thing, in the line of principles. Absolutely no question of the welfare of the country can possibly require his deportation."

On April 28, 1920, in response to the letter of the alien's counsel, the Assistant Secretary of Labor advised him as follows:

"After further reviewing this case, I find that the alien appears to have gone over to the unlawful Communist party from the lawful Socialist party knowingly; that is to say, he appears to have known the facts which make the Communist party an unlawful organization and those which make him a member of it. Whether or not he understood that the facts of which he had knowledge made this organization unlawful is immaterial. The question is one of the differences between error as to fact and error as to law. Violent as the presumption often is, every one is nevertheless presumed to know the law. But knowledge of essential facts must be proved. In this case the record shows that the alien knew the facts which make the Communist party unlawful, and also the facts which make him a member of it."

On May 20, 1920, the Assistant Secretary of Labor issued a warrant of deportation, reciting that Jurgans was an alien, in the United States in violation of the Act of October 16, 1918, to wit:

"That he is a member of or affiliated with an organization that advocates the overthrow by force or violence of the government of the United States; that he is a member of or affiliated with an organization that teaches the overthrow by force or violence of the government of the United States; that he is a member of or affiliated with an organiza-

tion that entertains a belief in the overthrow by force or violence of the government of the United States; and that he is a member of or affiliated with an organization that advocates the overthrow by force or violence of all forms of law."

Nothing in the brief or correspondence of counsel, prior to the issuance of the order of deportation, indicates any claim that Jurgans did not know what he was charged with, or that the hearing he had was unfair in any respect. The alien has been at liberty at all times on $1,000 bail, until he was technically surrendered to the custody of Mr. Seaman for the purpose of this proceeding. He has not been deported, because the necessary arrangements for his deportation to Russia could obviously not be made.

[1] The alien questions the lawfulness of his detention by this proceeding. "Deportation without a fair hearing, or on charges unsupported by any evidence, is a denial of due process, which may be corrected on habeas corpus." United States ex rel. Vajtauer v. Com'r of Immigration (U. S. Supreme Court, Jan. 3, 1927) 47 S. Ct. 302, 71 L. Ed. ——.

[2, 3] In this case, there was evidence to support the conclusion of the Secretary of Labor, so that the only question is as to the fairness of the hearing. "Findings of fact in deportation proceedings, supported by substantial evidence, will not be reviewed, in absence of fraud or mistake." Gambroulis v. Nash (C. C. A.) 12 F.(2d) 49; Hays v. Sesto (C. C. A.) 12 F.(2d) 698.

[4] It is contended that the hearing was unfair for the following reasons: That, in the conduct of the hearing, the attorney for the alien was not permitted to make motions or objections to procedure, the jurisdiction, the law, or the evidence, nor to make any record thereof; that practically all of the testimony taken on the hearing, outside of the alien's own, was hearsay and documentary evidence, that was itself hearsay or introduced and attached by reference only to the records of the proceedings, without opportunity granted to the alien to examine the same, or object to it, and without any foundation being laid for its admission; that the alien was arrested without a warrant; that he was denied the assistance of counsel for his defense, and was not confronted by the witnesses, or the evidence upon which the order of deportation was based; that he had no notice of the charge against him.

There seems to be no merit in the contention that counsel was not permitted to object to the introduction of evidence or to take exceptions. Rule 22, subd. 5 (b), of the Rules of May 1, 1917, U. S. Department of Labor, Bureau of Immigration, provided: "Objections and exceptions of counsel shall not be entered in the record, but may be presented by him in accompanying brief." Counsel was permitted to file a brief, which was forwarded to the Secretary of Labor. He was given ample opportunity to point out any defects in the proceeding, either jurisdictional or otherwise, and to call attention to incompetent evidence. Furthermore the record shows that further opportunity was afforded counsel, both before and after the deportation order was issued, to present fully each and every objection that he had to the issuance of such an order. It is difficult to see how the alien would have benefited in any way if his counsel had made his objections and exceptions part of the record upon the hearing.

[5] The fact that incompetent evidence was received and considered does not establish a want of due process. United States ex rel. Vajtauer v. Com'r of Immigration, supra; United States ex rel. Tisi v. Tod, Com'r of Immigration, 264 U. S. 131, 133, 44 S. Ct. 260, 68 L. Ed. 590. Therefore the claim that the hearsay of Inspector Campbell attached to the record is fatal to the hearing falls. Furthermore, that statement contained absolutely nothing that the alien did not himself admit upon the hearing, and nothing which could in any way damage him. If it had been competent, it would have proved nothing further than that Jurgans was an alien, and that he had a wife and family in Russia, about which there was no dispute. As to the exhibits introduced for the purpose of showing the character of the Communist party—which were part of another file in the bureau—see Jung See v. Nash (C. C. A.) 4 F.(2d) 639. Furthermore, it has been settled that that party was an organization which believed in the overthrow by force or violence of the government of the United States. Skeffington v. Katzeff (C. C. A.) 277 F. 129; Antolish v. Paul (C. C. A.) 283 F. 957; Ungar v. Seaman (C. C. A.) 4 F.(2d) 80.

As to the arrest without a warrant, and being denied the assistance of counsel, that clearly relates to the alien's being taken before Inspector Campbell prior to his arrest under the warrant, and questioned on January 10th. His arrest without a warrant by Campbell, and his inquisition by Campbell, had little, if any, bearing upon the hearing

in question. The few admissions which he made were absolutely harmless, and it is obvious, to any one reading the record, that he was in no way prejudiced thereby. See the case of Low Wah Suey v. Backus, 225 U. S. 460, 468, 471, 32 S. Ct. 734, 56 L. Ed. 1165, where much the same situation is discussed, and the examination without counsel held to be authorized.

There is only one claim made by the alien which has any merit, and that is that he was not informed of the charge against him; that by virtue of the cases of Ungar and Husman v. Seaman, which are found in 4 F.(2d) 80. It is claimed that this case is a parallel case. In most respects it is not, but the charges in the warrant of arrest are the same. The Circuit Court of Appeals of this Circuit in those cases held that these charges constituted no fair notice to the alien that he was called upon to meet the simple charge that he was a member of the Communist party; that he had no opportunity to procure counsel or prepare to meet the real charges against him, before the hearing; and that one of the essentials of a fair hearing is that the accused shall be notified of the nature of the charge against him *in time* to meet it.

While those cases lend force to counsel's contention, it is evident that the court took into consideration both the generality of the charges and the lack of time to meet them. Here the charge had the same generality, it is true; but there is nothing in the record to show that the alien did not have abundant opportunity to employ counsel, and to ascertain that the organization referred to in the warrant of arrest was the Communist party. On the other hand, the record shows that he did procure counsel; and a reading of the testimony further indicates that he knew exactly what the charge was that he had to meet.

[6, 7] It cannot be expected that charges contained in a warrant of arrest issued by the Secretary of Labor will comply with all the rules governing indictments in criminal actions in the United States courts, nor that the hearings before the immigration inspectors should be accompanied by all the formality of a court proceeding. Smith v. Hays et al. (C. C. A.) 10 F.(2d) 145. If the warrant of arrest in the case of Mahler v. Eby, 264 U. S. 32, 44 S. Ct. 283, 68 L. Ed. 549, was good, no complaint should be made about the warrant in this case.

In the case of Low Wah Suey v. Backus, supra, the court said:

"A series of decisions in this court has settled that such hearings before executive officers may be made conclusive when fairly conducted. In order to successfully attack by judicial proceedings the conclusions and orders made upon such hearings it must be shown that the proceedings were manifestly unfair, that the action of the executive officers was such as to prevent a fair investigation or that there was a manifest abuse of the discretion committed to them by the statute. In other cases the order of the executive officers within the authority of the statute is final. United States v. Ju Toy, 198 U. S. 253 [25 S. Ct. 644, 49 L. Ed. 1040]; Chin Yow v. United States, 208 U. S. 8 [28 S. Ct. 201, 52 L. Ed. 369]; Tang Tun v. Edsell, 223 U. S. 673 [32 S. Ct. 703, 56 L. Ed. 606]."

In United States ex rel. Vajtauer v. Commissioner of Immigration, supra, the Supreme Court said:

"Upon a collateral review in habeas corpus proceedings, it is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant as to convince a court of the essential unfairness of the trial. Tisi v. Tod, 264 U. S. 131, 133, 44 S. Ct. 260, 68 L. Ed. 590."

See, also, Whitfield v. Hanges (C. C. A.) 222 F. 745; Gambroulis v. Nash, supra; Hays, District Director, v. Sesto, supra.

The question, then, is whether the hearing accorded to William Martin Jurgans was essentially unfair by reason of some flagrant error. To my mind, the hearing was fair and the entire proceedings indicated a desire on the part of the Secretary of Labor to ascertain fully the facts and to give to the alien and his counsel every opportunity to present whatever reasons they might have for believing that a warrant of deportation should not be issued.

The writ of habeas corpus must be dismissed. It is so ordered.